**MANDATE**

16-cv-3399(ER)

18-346
John Doe I, et al v. Express Scripts, Inc., Anthem, Inc.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/03/2021

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 7th day of December, two thousand twenty.

Present:    RALPH K. WINTER,
            ROSEMARY S. POOLER,
                 *Circuit Judges*.[1]

_____

JOHN DOE 1, ON BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED, JOHN DOE 2, ON BEHALF
OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
BRIAN CORRIGAN, STAMFORD HEALTH, INC.,
BROTHERS TRADING CO., INC.,

*Plaintiffs-Appellants*,

KAREN BURNETT, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED, BRENDAN FARRELL,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, ROBERT SHULLICH, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Consolidated Plaintiffs-Appellants*,

---

[1] Judge Robert Sweet, United States District Court for the Southern District of New York, was a member or the panel, sitting by designation. Judge Sweet died, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

1

|  |  |
|---|---|
| v. | 18-346 |

EXPRESS SCRIPTS, INC., ANTHEM, INC.,

*Defendants-Appellees*.[2]

---

| | |
|---|---|
| Appearing for Appellant: | Jeffrey Lewis, Keller Rohrback L.L.P. (Derek W. Loeser, Gretchen S. Obrist, David J. Ko, *on the brief*), Oakland, CA. |
| | Joe R. Whatley, Jr., Whatley Kallas, LLP, New York, NY (*on the brief*). |
| Appearing for Appellee Anthem, Inc.: | Glenn M. Kurtz, White & Case LLP, New York, NY. |
| Appearing for Appellee Express Scripts, Inc.: | Derek L. Shaffer, Quinn Emanuel Urquhart & Sullivan, LLP (Jonathan G. Cooper, Andrew S. Corkhill, Michael J. Lyle, Jacob J. Waldman, *on the brief*), New York, NY. |
| | Paul J. Ondrasik, Jr., Eric G. Serron, Osvaldo Vazquez, Steptoe & Johnson LLP, Washington, DC (*on the brief*). |
| Appearing for Amici Curiae *in support of Appellants*: | Karen L. Handorf, Cohen Milstein Sellers & Toll, PLLC, Washington, DC, *for amici curiae AARP and National Employment Lawyers Association*. |
| | Mary Ellen Signorille, AARP Foundation, Washington, DC, *on the brief*, *for AARP*. |
| | Matthew C. Koski, National Employment Lawyers Association, Washington, DC, *on the brief*, *for National Employment Lawyers Association*. |
| Appearing for Amici Curiae *in support of Appellees*: | M. Miller Baker, McDermott Will & Emery LLP (Sarah P. Hogarth, Eric Hageman, *on the brief*), Washington, DC, *for amici curiae Pharmaceutical Care Management Association, America's Health Insurance Plans, and the Chamber of Commerce of the United States of America*. |

---

[2] The Clerk of the Court is directed to amend the caption as above.

>Steven P. Lehotsky, U.S. Chamber Litigation Center, Washington, DC, *on the brief*, *for the Chamber of Commerce of the United States of America*.

Appeal from the United States District Court for the Southern District of New York (Ramos, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Plaintiffs appeal from the January 5, 2018 opinion and order of the United States District Court for the Southern District of New York (Ramos, *J.*) dismissing their putative consolidated class action against Anthem, Inc. and Express Scripts, Inc. alleging the two violated their fiduciary obligations under the Employee Retirement Income Security Act ("ERISA") in setting prescription drug prices. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Anthem is a health benefits company. Anthem offers its health care plans both through employers and directly to individual subscribers. Anthem also offers "Administrative Services Only" plans to self-funded employer plans: the plans pay Anthem to administer the plan and negotiate for lower rates with health care providers. Express Scripts is a pharmacy benefits manager ("PBM"). Anthem uses PBMs to manage the prescription medication programs it offers for health plans. PBMs negotiate with drug manufacturers, manage formularies, contract with pharmacies, and process and pay prescription drug claims. Express Scripts is the largest PBM in the United States, with nearly 97 percent of the pharmacies belonging to its network. The plaintiffs are certain health care plans regulated by ERISA that are either administered or insured by Anthem, as well as people individually enrolled in Anthem health plans who receive prescription benefits through Express Scripts.

Anthem and Express Scripts entered into a 10-year PBM Agreement on December 1, 2009. The PBM Agreement provides that Express Scripts will process the claims of Anthem participants, both through brick-and-mortar pharmacies and directly through mail-order pharmacies. In addition, Express Scripts provides administrative services relating to prescription drugs for Anthem's health plans and participants. Plaintiffs allege that at the same time the parties were negotiating the PBM Agreement, Express Scripts and Anthem were also negotiating Express Script's purchase of three PBM companies owned by Anthem: NextRx, LLC, NextRX, Inc. and Next Rx Services (collectively, the "NextRx Companies") to Express Scripts (the "NextRx Agreement").

The signing of the PBM Agreement was a condition precedent to the sale of the NextRx Companies, and the purchase price was linked to the price Anthem would pay for prescription drugs during the term of the PBM Agreement. During negotiations, Express Scripts offered to pay $500 million for the NextRx Companies in exchange for providing prescription medication at a lower prices. Alternatively, Express offered to pay $4.675 billion for the NextRx Companies, but would then charge higher prices for prescription medications during the PBM Agreement.

Anthem chose the latter option. Plaintiffs allege that in so choosing, Anthem agreed to allow Express Scripts to charge far more for prescription drugs than the industry standard. Anthem did so by agreeing to allow Express Scripts wide, and relatively unfettered, discretion in setting drug prices. Thus, plaintiffs allege, even though Anthem wielded significant bargaining power, Express Scripts charges Anthem plans a higher rate for drugs than those charged by PBMs to other plans—and those inflated costs are passed on to the plan subscribers.

Plaintiffs sued, alleging claims under ERISA, the Racketeer Influenced and Corrupt Organizations Act, and the Affordable Care Act, as well as a variety of state law torts. Express Scripts and Anthem both moved to dismiss for failure to state a claim upon which relief could be granted. The district court granted the motions. *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655 (S.D.N.Y. 2018). This appeal followed.

Plaintiffs first argue that the district court erred in dismissing their claims under ERISA §§ 409 and 502. Section 409 makes any fiduciary who breaches the provisions of ERISA personally liable to the plan for restoring any profits the fiduciary reaped through use of plan assets, and to "make good" any losses the plan suffered as a result of the breach. 29 U.S.C. § 1109(a). Section 502 permits plan participants, beneficiaries, and fiduciaries to bring actions under ERISA for equitable relief. 29 U.S.C. § 1132(a)(3). Specifically, the complaint alleges that defendants breached Section 404 (ERISA fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries" of the plan); Section 405 (co-fiduciary liability); and Section 406 (barring an ERISA fiduciary from engaging in certain transactions). 29 U.S.C. §§ 1104, 1105, 1106. The first issue is whether defendants were "acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "Fiduciary" is defined in the statute as:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Second Circuit employs a functional approach to determine which individuals and entities are ERISA fiduciaries "by focusing on the function performed, rather than on the title held." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). "[A] person may be an ERISA fiduciary with respect to certain matters but not others; fiduciary status exists only to the extent that the person has or exercises the described authority or responsibility over a plan." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (internal quotation marks omitted).

Plaintiffs allege Anthem was acting as a fiduciary when it negotiated the agreement to sell the NextRx Companies to Express Scripts for a higher price knowing it would result in

4

Express Scripts charging a higher price for prescription drugs. In entering into the PBM Agreement, plaintiffs argue, Anthem exercised its discretion to manage plaintiffs' prescription benefit—discretion that flowed from Anthem's role as an ERISA fiduciary. The Supreme Court explained in *Pegram* that the fiduciary responsibilities imposed by ERISA find their origins in the common law of trusts. 530 U.S. at 224. "Beyond the threshold statement of responsibility, however, the analogy between ERISA fiduciary and common law trustee becomes problematic . . . because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." *Id.* at 225. Thus, while a traditional fiduciary "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries . . . [u]nder ERISA . . . a fiduciary may have financial interests adverse to beneficiaries." *Id.* (internal quotation marks omitted). "Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries when they act as employers (e.g., firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Id.* (italics omitted). This is the so-called "two hat[]" doctrine. *Id.* The *Pegram* Court noted that "the trustee under ERISA may wear different hats," for example, "[e]mployers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (e.g., firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." 530 U.S. at 225. "Nor is there any apparent reason in the ERISA provisions to conclude . . . that this tension is permissible only for the employer or plan sponsor, to the exclusion of persons who provide services to an ERISA plan." *Id.* "'[G]eneral fiduciary duties under ERISA [are] not triggered' . . . when the decision at issue is, 'at its core, a corporate business decision, and not one of a plan administrator.'" *Am. Psychiatric Assoc. v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 n.2 (2d Cir. 2016) (alterations in original) (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001)).

Here, the district court found Anthem was not acting in a fiduciary capacity when it entered into the PBM Agreement. We agree. This Court previously found that the decision to sell a corporate asset is not a fiduciary decision—even if the sale affects an ERISA plan. See *Flanigan*, 242 F.3d at 88 ("Because GE's decision to spin-off the division along with its pension plan was, at its core, a corporate business decision, and not one of a plan administrator, GE was acting as a settlor, not a fiduciary, when it transferred the surplus to Lockheed. Therefore, GE's general fiduciary duties under ERISA were not triggered."). Anthem did not act as an ERISA fiduciary when it entered into the NextRx and PBM Agreements, even though its decisions may ultimately affect how much plan participants pay for drug prices. *See, e.g.*, *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010) (insurer did "not act[] as a fiduciary when it negotiated the challenged rate changes, principally because those business dealings were not directly associated with the benefits plan at issue but were generally applicable to a broad range of health-care consumers.").

Similarly, we find no error with the district court's finding that Express Scripts was not a fiduciary. The district court concluded that Express Scripts was not a fiduciary because (1) a PBM does not exercise discretion in setting prices when prices are set according to contractual terms; and (2) Express Script did not control its own compensation. *In re Express Scripts*, 285 F.

Supp. 3d at 678-81. Plaintiffs argue that the PMB Agreement gives Express Scripts discretionary authority to set prescription drug prices, and that discretion allowed Express Scripts to act as an ERISA fiduciary. Plaintiffs point out that Express Scripts had the discretion to (1) decide whether to classify medications as "brand" or "generic," which directly affected how much plan participants pay; (2) determine whether drugs were to be included in the "maximum allowable cost" list, which also directly affected how much plan participants had to pay; and (3) negotiate rebates with drug manufacturers, which the PBM Agreement allows Express Scripts to keep for itself. Appellants' Br. at 42-44.

We agree with the district court that when a PBM sets prices for prescription drugs pursuant to the terms of a contract, it is not exercising discretionary authority and therefore not acting as an ERISA fiduciary. *See Pegram*, 530 U.S. at 226 (insurer does not act in a fiduciary capacity under ERISA when it "mak[es] decisions . . . influenced by the terms" of the agreement between the insurer and employer, even when insurer "ultimately profit[s] from [its] own choices to minimize the medical services provided."). Even fully crediting plaintiffs' allegations that the PBM Agreement provided Express Scripts with extraordinarily broad discretion in setting prescription drug prices, at bottom the ability to set such prices is a contractual term, not an ability to exercise authority over plan assets.

We have considered the remainder of Appellants' arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit